IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN FEEHAN

    Plaintiff                                CIVIL ACTION NO.

vs.

TRANS UNION, LLC,
and
EXPERIAN INFORMATION
SOLUTIONS, INC.
and
BANK OF AMERICA
d/b/a BANK OF AMERICA, N.A. &
d/b/a BANK OF AMERICA CORPORATION

    Defendants

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action for damages brought by John Feehan, an individual consumer, against Trans Union, LLC and Experian Information Solutions, Inc. for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681 *et seq.,* and against Bank of America d/b/a Bank of America, N.A. and d/b/a Bank of America Corporation, for violations of the FCRA, 15 U.S.C. §§1681 *et seq.* and for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("CPL").

### JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. §1681p, 28 U.S.C. §1331, 1337 and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff John Feehan (Plaintiff) is an adult individual who resides in Bucks County, Pennsylvania.

5. Defendant Bank of America d/b/a Bank of America, N.A. and d/b/a Bank Of America Corporation ("B of A") is a business entity that regularly conducts business in the Eastern District of Pennsylvania and that has a principal place of business located at 100 North Tyron Street, Charlotte, NC 28255.

6. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency that regularly conducts business in the Eastern District of Pennsylvania and that has a principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

7. Defendant Trans Union, LLC ("Trans Union") is a consumer reporting agency that regularly conducts business in the Eastern District of Pennsylvania and that has a principal place of business located at 1510 Chester Pike, Crum Lynne, PA 19022.

## FACTUAL ALLEGATIONS

**A. The Inaccurate Charge On Plaintiff's Consumer Report**

8. In or about 2019, Plaintiff had, as the sole owner and sole user, two credit card accounts with B of A, one ending in 9034 with a credit card availability of $5300.00 and a cash credit line of $1590.00 and the other ending in 3300 with a credit card availability of $19,500.00 and a cash credit line of $5,850.00.

9. Up until November 2019, Plaintiff had no problem using these credit cards and he had noticed no errors on his monthly credit card statements. Further, Plaintiff had no record of delinquencies in paying required amounts as they became due on these accounts.

10. When Plaintiff received his credit card statement for the account ending in 9034 for November-December, 2019, there was a charge from Kauai Irrigation located in Lihue, Hawaii for $8,738.00 that had been made on December 12, 2019.

11. This charge was false in that Plaintiff had never heard of Kauai Irrigation and had never purchased anything from this company.

12. Upon receipt of the credit card statement for November-December, 2019, and pursuant to B of A's $0 Liability Guarantee regarding fraudulent transactions, Plaintiff contacted B of A to dispute the $8,738.00 charge. He told B of A's representatives that the charge did not belong to him and that he would not be paying that charge.

13. Plaintiff thereafter checked his consumer report and learned that despite Plaintiff's dispute of the charge to B of A, B of A reported it as due to Experian and Trans Union and that they were reporting that account as delinquent and ultimately, as a charge off on his consumer report.

14. In addition to continuing to dispute the charge to B of A, Plaintiff also disputed the charge to Trans Union and Experian by both oral and detailed written communications to their representatives and by following the established procedures of Trans Union and Experian for disputing consumer credit information.

15. By way of correspondence dated 1/12/2021, Trans Union verified the inaccurate charge as "accurate and updated".

16. By way of correspondence dated 2/4/2021, Experian notified Plaintiff: "Outcome: Remains-The company that reported the information has certified to Experian that the information is accurate. This item was not changed as a result of our processing of your dispute".

17. Subsequent to Plaintiff's disputes, Trans Union and Experian each failed to remove the inaccurate information regarding the B of A credit card account contained within Plaintiff's consumer report.

18. As a result, B of A continued to knowingly and willfully report the derogatory and inaccurate information to Trans Union and Experian and they continued publishing the inaccurate information and continued publishing and disseminating such inaccurate information to other third parties, person, entities and credit grantors. Trans Union and Experian repeatedly published and disseminated the inaccurate information on Plaintiff's consumer reports to third parties from at least March, 2020 through the present.

19. Plaintiff filed a police report regarding the inaccurate charge he did not make on his B of A credit card account.

20. By way of correspondence dated September 30, 2020, B of A notified Plaintiff that after reviewing his account history, his credit reports and "current or past delinquency on one or more of your accounts with us and/or our affiliates", they decided to close Plaintiff's other account with B of A ending in 3300. Prior to the inaccurate charge of $8,738.00 listed on the account ending in 9034, Plaintiff had no past delinquencies on either of his accounts with B of A or previous delinquencies and/or adverse accounts reporting on his consumer reports.

21. Despite Plaintiff's efforts, Trans Union and Experian have willfully and negligently never; 1) contacted Plaintiff to follow up on, verify or elicit specific information about Plaintiff's disputes; 2) contacted any third parties (for example, following upon with Kauai Irrigation) that would have relevant information concerning Plaintiff's disputes; 3) forwarded any relevant information concerning Plaintiff's disputes to the entities

originally furnishing the inaccurate information; 4) requested or obtained relevant information from B of A.

22. As a result, Trans Union and Experian have deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, failed to conduct reasonable investigations of Plaintiff's disputes as required by the FCRA, have failed to remove the inaccurate information and have continued to report the derogatory inaccurate information about Plaintiff.

23. In response to Plaintiff's disputes to Trans Union and Experian, and thereby verifying Trans Union and Experian communicated Plaintiff's dispute to B of A, B of A informed Plaintiff by way of its own correspondence dated August 7, 2020 that it was accurately reporting the charge to the credit reporting agencies and further stated: "at this time we consider your dispute resolved". In reaching this conclusion, B of A, the furnisher of the inaccurate information, deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to conduct a reasonable investigation of Plaintiff's disputes after being contacted by the relevant credit reporting agencies concerning Plaintiff's disputes made to those credit reporting agencies. As a result, B of A has willfully and negligently continued reporting the inaccurate charge to the credit reporting agencies.

24. As a result of all Defendants' conduct, Plaintiff has suffered actual damages in the form of lost credit opportunities, harm to credit reputation and credit score, invasion of privacy, damage to reputation, worry, fear, distress, frustration, embarrassment, humiliation, and emotional distress.

25. In addition, and as a result of all Defendants' conduct, Plaintiff has suffered sleepless nights, a strong feeling of aggravation, interruption to his daily routines, upset that led to interference with his personal relationships, loss of appetite and a sense of hopelessness that no one would help him remove the inaccurate charge reporting as delinquent and charged off on his consumer report despite his exhaustive efforts for over a year seeking this help.

26. At all times pertinent hereto, all Defendants were acting by and through their agents, servants or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendants herein.

27. At all times pertinent hereto, the conduct of all Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of Plaintiff herein.

### B. B of A's Improper Debt Collection Efforts Of Inaccurate Charge on Plaintiff's B of A Credit Card Account

28. In addition to the inaccurate charge causing problems and harm to Plaintiff and Plaintiff's consumer report related issues, B of A made representations and/or failed to make representations that B of A knew or should have known were false and misleading while seeking to improperly collect payment from Plaintiff for a debt that did not belong to him.

29. Pursuant to B of A's $0 Liability Guarantee policy advertised on its website and otherwise made known both publically and to its customers pertaining to fraudulent transactions, Plaintiff contacted B of A to report the inaccurate charge upon discovering it on his November-December, 2019 statement.

30. By way of a correspondence from B of A dated February 27, 2020, B of A stated "Good News - your claim has been resolved." and went on to state that his account ending in 9034 had been credited, that there was nothing he had to do on his end and that he would see the credits on his next monthly statement.

31. However, by way of correspondence dated March 19, 2020, B of A falsely informed Plaintiff that on January 25, 2020, he agreed to pay the balance of $8,738.00 on account ending in 9034, that his claim was closed and the charges would be transferred to his new account. However, Plaintiff had not agreed on January 25, 2020 or on any other date to pay the $8,738.00 and in fact, he had informed B of A he would not be paying it when he called upon receipt of the November-December, 2019 statement to report he had not made the charge appearing on his credit card account statement. Further, Plaintiff knew nothing about a new account being opened and no explanation was provided by B of A thereby leaving Plaintiff confused and worried.

32. The next account statement B of A sent to Plaintiff included the charge $8,738.00 and it had a new account number ending in 7235. Additionally, it noted on this statement the fraud dispute Plaintiff had made previously regarding the account ending in 9003, though B of A did not credit the account or delete the charge from his account.

33. The next account statement for account ending in 7235 Plaintiff received from B of A was for the period of March 24 to April 23, 2020. It included the charge Plaintiff was disputing but also had a late fee in the amount of $28.00 charged to the account on April 20, 2020 plus interest. In addition, there was a charge for $179.27 made on March 30, 2020 for an Amway Order though Plaintiff had not purchased anything from Amway.

Again, Plaintiff notified B of A that a charge he had not made was appearing on his credit card statement.

34. On the next statement for the time period of April 24 through May 23, 2020, the inaccurate charge of $8,738.00 remained though it was now $9,097.84 as a result of late fees and interest added on while the charge for $179.27 was shown to have been credited back. Plus, the account number had been changed again without explanation and now was ending in 2684.

35. Out of his concern, worry and fear over the continued unresolved and inaccurate charge he did not make and due to the confusion felt by Plaintiff created by B of A from changing account numbers and further due to B of A's misrepresentations about its $0 liability guarantee for fraudulent charges, Plaintiff believed he had no choice other than to close the account now ending in 2684 in April, 2020 and as a result lost the $5,300.00 credit card availability and $1590.00 cash credit line.

36. The unresolved inaccurate charge, confusion and misrepresentations continued nevertheless. By way of correspondence dated May 4, 2020, B of A stated to Plaintiff: "Good news - Your claim has been resolved" and that he would be receiving a credit, though the correspondence referenced the account ending in 7235, an account that no longer existed as a result of B of A supposedly closing it and replacing it with the account that ended in 2684.

37. Plaintiff continued to receive statements for the account ending in 2684 with the inaccurate charge listed on it as due so Plaintiff continued to reach out to B of A to dispute that charge. In response, B of A notified Plaintiff that they received his inquiry and that they would respond to him within thirty days though no response was

forthcoming as promised and instead, B of A continued to send statements seeking payment for the inaccurate charge along with interest and late fees.

38. On July 29, 2020, Plaintiff submitted a complaint about the inaccurate charge on his credit card account to the Consumer Finance Protection Bureau (cfpb) whereafter this complaint was acknowledged as received and sent to B of A for a response. Said acknowledgement stated Plaintiff would receive a status update within fifteen days.

39. On August 3, 2020, Plaintiff received an email with a subject line: "Acknowledgement of your inquiry" from Tony Owens, Resolution Specialist, Regulatory Operations, Bank of America stating he "welcomed the opportunity" to address Plaintiff's concerns and further stated he is the "Point of contact until this matter is resolved". Tony Owens further stated that "We will be responding to your concerns via secured email. Please follow instructions in that email to access our response...." though Plaintiff never heard from Tony Owens again after misleading Plaintiff to believe hope of resolution was this time on the way.

40. Plaintiff was informed on August 11, 2020 by the cfpb that B of A was "still working on your issue" and further that Plaintiff should get a final response from B of A within 60 days. However, Plaintiff did not get a final response to his cfpb complaint from B of A within 60 days though he continued to get monthly statements with the unresolved inaccurate charge as the total basis for the balance plus interest and late fee charges.

41. By way of correspondence dated September 30, 2020, B of A informed him "We've made the decision to close your credit card account ending in 3300" and further stated:

> How we made this decision
>
> We carefully reviewed your account history, credit report(s) provided by the credit reporting agency(ies) listed below and current economic and loss trends.

> We also considered your relationship with us and, unfortunately, we had to close your account because of the following reasons:
>
> > Current or past delinquency on one or more of your accounts with us and/or our affiliates

42. Plaintiff had no outstanding balance and no past delinquencies on the account ending in 3300 or any other credit card account other than the false and unresolved inaccurate charge he did not make on his other (now closed) B of A credit card account ending first in 9034, then in 7235 and then in 2684.

43. As a result of this false and inaccurate charge on Plaintiff's other (now closed) B of A credit card account, B of A wrongly took away his account ending in 3300 and in so doing, Plaintiff lost $19,500.00 in credit card use and $5,850.00 in cash credit advances previously available to him.

44. Monthly credit card statements for the closed account ending in 2684 continued with the initial unresolved inaccurate charge of $8,738.00 increasing each month as a result of B of A adding on interest and late fees. By way of an email from B of A titled "Prompt attention requested" and dated December 20, 2020 said that a balance of $9,465.34 would be charged off the next month and further, "we may send your account to a third-party collection agency to collect the balance due".

45. By way of correspondence dated January 5, 2021, Plaintiff heard from Commonwealth of Pennsylvania, Office of Attorney General, Bureau of Consumer Protection in response to a complaint Plaintiff filed with that office wherein Plaintiff was informed that the dispute between Plaintiff and B of A over the unresolved inaccurate charge was at an impasse and therefore, that office had not been able to resolve the matter.

46. By way of email from B of A dated January 6, 2021 titled "Immediate attention required" wherein it stated, *inter alia:* We need to receive payment by 7 p.m. on the last business day of the month or your account will be charged off....If your account is charged off, you remain responsible for paying the balance owed, and we may continue to pursue collection efforts".

47. On January 11, 2021 Plaintiff received another email from B of A similar to the one he received from B of A on January 6, 2021 causing him to feel harassed, concerned and worried about the effects on his creditworthiness and his life from a charge off resulting from a charge he did not make but that he continued to be held responsible for by B of A.

48. By way of correspondence from B of A dated January 22, 2021 titled "Payment Needed", B of A again stated Plaintiff's account was at risk of being charged off if a payment was not made by the last day of the month and again threatened Plaintiff with collection efforts against him.

49. By way of email from B of A dated January 27, 2021 and titled "Final notice", B of A stated, *inter alia,* "This is our final notice before your account is charged off."

50. At no time did B of A's agents or representatives personally reach out to Plaintiff or make any kind of an effort to resolve this inaccurate charge on Plaintiff's account and despite all of the inquiries, disputes and contact made by Plaintiff, B of A at no time provided any basis, documents or other proof to substantiate the refusal to delete the inaccurate charge on Plaintiff's account and to cease their improper collection efforts.

51. By way of correspondence from B of A dated February 1, 2021, B of A stated it received Plaintiff's request to research the credit reporting of the inaccurate charge but that it needed the following information: Identify the account, provide confirmation of his

credit file reporting, explain the discrepancy and provide supporting documentation, all of which Plaintiff previously sent to B of A though Plaintiff complied and again mailed to B of A the information requested.

52. By way of correspondence dated February 8, 2021, D & A Services, LLC ( D & A), a debt collector acting on behalf of B of A, informed Plaintiff that he had 30 days to dispute the debt, now $9,672.67, or that office will assume the debt is valid in response to which Plaintiff forwarded to D & A Services, LLC a letter disputing the debt and demanding, *inter alia,* proof that said debt is owed to B of A.

53. Thereafter, D & A responded by forwarding monthly statements seeking payment for the same inaccurate charge he never made on separate monthly statements with different account numbers for the same month thereby resulting in continued confusion and misrepresentation of the alleged balance owed on these accounts.

54. B of A has since sent notices saying his claim had been resolved, each time citing different account numbers thereby leaving Plaintiff with a sense of confusion and uncertainty over what to believe.

55. By its actions as described above, B of A attempted to oppress and harass Plaintiff into paying for a charge that did not belong to him. In addition to having to endure this situation for over a year, it caused Plaintiff to suffer loss of credit as well as the loss of many hours of Plaintiff's time to dispute this charge and caused him to suffer emotional distress, humiliation, embarrassment, harm to Plaintiff's creditworthiness, credit opportunities, mental wellbeing and peace of mind as described in detail in paragraphs 24 and 25 above plus (so far) $84.30 in copying charges and $52.55 for certified mail.

## CLAIMS FOR RELIEF

### COUNT I
### (FCRA - 15 U.S.C. §1681 n and o)
### (Plaintiff v Experian & Trans Union)

56. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

57. At all times pertinent hereto, Experian and Trans Union were "persons" and "consumer reporting agencies" as defined by 15 U.S.C. §1681a(b) ad (f).

58. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

59. At all times pertinent hereto, the above mentioned credit reports were "consumer reports" as defined by 15 U.S.C. §1681a(d).

60. Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Trans Union and Experian are liable to Plaintiff for engaging in the following conduct:

   a) willfully and negligently failing to conduct a proper and reasonable reinvestigation concerning the inaccurate information after receiving notice of the disputes from Plaintiff, in violation of 15 U.S.C. §1681i(a);

   b) willfully and negligently failing to provide prompt notice of the inaccurate information and Plaintiff's disputes to the furnishing entities, in violation of 15 U.S.C. §1681i(a);

   c) willfully and negligently failing to provide all relevant information provided by Plaintiff regarding the disputes of the inaccurate information to the furnishing entities, in violation of 15 U.S.C. §1681i(a);

   d) willfully and negligently failing to review and consider all relevant information submitted by Plaintiff concerning the disputes of the inaccurate information, in

violation of 15 U.S.C. §1681i(a);

e) willfully and negligently failing to delete the inaccurate information from Plaintiff's credit file after reinvestigation, in violation of 15 U.S.C. §1681i(a);

f) willfully and negligently failing to timely and properly investigate the inaccurate information after receiving notice of the disputes from Plaintiff;

g) willfully and negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. §1681e(b);

h) willfully and negligently failing to properly and timely delete the inaccurate information from Plaintiff's credit files despite being unable to verify the accuracy of the information and/or being provided with proof of its inaccuracy; and

i) willfully and negligently continuing to report the inaccurate information despite having knowledge of its inaccuracy and/or inability to verify the same.

61. The conduct of Trans Union and Experian was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff John Feehan prays for judgment to be entered against Trans Union and Experian individually, joint and severally, as follows:

a) Actual damages;

b) Punitive damages;

c) Statutory damages;

d) Attorney fees and costs incurred as expenses in this litigation;

e) Such other relief this Honorable Court deems just and appropriate.

## COUNT II
### (FCRA - 15 U.S.C. §1681 n and o)
### (Plaintiff v B of A)

62. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

63. At all times pertinent hereto B of A is a "persons" as defined by 15 U.S.C. §1681a(b).

64. B of A violated sections 1681n and 1681o of the FCRA by engaging in the following conduct:

   a) willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

   b) willfully and negligently failing to review all relevant information concerning Plaintiff accounts provided to B of A;

   c) willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

   d) willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

   e) willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

   f) willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiff to credit reporting agencies and other entities; and

   g) willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

65. B of A's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, B of A is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as such other relief, permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff John Feehan prays for judgment be entered against B of A as follows:

a) Actual damages;

b) Punitive damages;

c) Statutory damages;

d) Attorney fees and costs incurred as expenses in this litigation;

e) Such other relief this Honorable Court deems just and appropriate.

## COUNT III
**Violation of Pennsylvania Unfair Trade Practices Consumer Protection Law
73 P.S. §201-1, et seq
(Plaintiff v B of A)**

66. Plaintiff incorporates by reference the foregoing paragraphs as if set forth at length herein.

67. Plaintiff is a "person" as defined by 73 P.S. §201-2(2).

68. B of A is a "person" as defined by 73 P.S. §201-2(2).

69. The type of business and services provided by Defendant are "trade or commerce" within the scope of 73 P.S. §201-2(3).

70. B of A made representations and/or failed to make representations that B of A knew or should have known were false and misleading or in having insufficient information

upon which a reasonable belief in the truth of the representation could be based.

71. Despite that B of A advertises on its website and otherwise makes known that it protects its customers with a $0 Liability Guarantee in circumstances of fraudulent transactions when promptly reported, B of A knowingly misrepresented to Plaintiff that said charge was going to be credited back to him but instead thereafter refused to do so in the absence of any explanation to Plaintiff.

72. In addition, B of A sent numerous communications to Plaintiff which were inconsistent, misleading and confusing in regard to how the inaccurate charge Plaintiff did not make was going to be handled by B of A and at times falsely led Plaintiff to believe the charge would be removed from his account while at other times, asserting that Plaintiff was being held responsible for it, without reason or documentation as to either.

73. Further, B of A kept changing Plaintiff's account number and referring to different credit card numbers in different communications to Plaintiff and further taking different actions at different times in regard to different account numbers thereby causing further confusion and increasing the likelihood of misunderstanding in regard to Plaintiff's credit card account and the inaccurate charge B of A listed on Plaintiff's account.

74. The aforesaid methods, acts or practices as described in detail above constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by 73 P.S. §201-1, et seq. including but not limited to the following:

    a) §201-2(4)(ii), which prohibits causing the likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods and services;

    b) §201-2(4)(v), which prohibits representing that goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that they do not have;

c) § 201-2(4)(vii), which prohibits representing that goods or services are of a particular standard, quality or grade…if they are of another;

d) §201-2(4)(xiv), which prohibits failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

e) §201-2(4)(xxi), which prohibits engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

75. Plaintiff justifiably relied on the oral and written representations and guarantees provided by B of A in the handling of the inaccurate charge on his account.

76. As a result of the deceptive and/or misleading action and/or inaction as described in detail above, B of A is liable to compensate Plaintiff for the full amount of statutory and actual damages, as well as such other relief including treble damages, attorney fees and costs permitted under the law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff John Feehan prays for judgment be entered against B of A as follows:

a) Actual damages;

b) Statutory damages;

c) Treble damages

d) Attorney fees and costs incurred as expenses in this litigation;

e) Such other relief this Honorable Court deems just and appropriate.

## VI. DEMAND FOR JURY TRIAL

77. Plaintiff is entitled to, and hereby respectfully demands, a trial by jury.

Respectfully submitted,

**PINE STREET LEGAL, LLC**

BY: /s/ Nancy Kanter
Nancy Kanter, Esquire
Attorney ID# 51256
19 S Pine Street
Doylestown, PA 18901
Tel.: (215) 345-9214
Email: nkanter@pinestreetlegal.com
**Attorney For Plaintiff**

Date: May 6, 2021